FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 05 2010

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Ed Christensen, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Civil Action No. |
| v. | § | |
| | § | 1 10-cV-0336 |
| ERM Group, Inc.; Environmental | § | |
| Resources Management – Southeast, Inc. | § | JURY TRIAL DEMANDED |
| and ERM Remediation & | § | |
| Construction Management Southeast, LLC | § | |
| | § | |
| Defendants. | § | |

WSD

## COMPLAINT

COMES NOW Plaintiff Ed Christensen, hereinafter "Plaintiff," by and through his attorneys, and shows this Honorable Court the following:

### Jurisdiction and Venue

1. This is an action for damages and injunctive relief for violations of the prohibitions against discrimination contained in the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et. seq., (hereinafter "ADA"), and the prohibitions against discrimination and interference with rights contained in the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et. seq., (hereinafter "ERISA").

2. The jurisdiction of this court is invoked pursuant to 42 U.S.C. §12117, 28 U.S.C. § 1331, and 29 U.S.C. §1132.

3. Venue in this case is proper pursuant to 28 U.S.C. §1391(b) because the unlawful employment practices described herein were committed within the State of Georgia, in the Northern District of Georgia, Atlanta Division.

4. On or about July 1, 2008, Plaintiff filed charges of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of Defendants' discriminatory and retaliatory acts. Plaintiff received a "right to sue" notice from the EEOC and is filing this Complaint within 90 days of receipt of same. This action is timely filed, and Plaintiff has satisfied all conditions to the filing of this action.

## Parties

5. Plaintiff Ed Christensen is an adult male citizen of the State of Georgia. At all times relevant to this matter, Plaintiff was an employee of the Defendants.

6. Defendant ERM Group, Inc. (hereinafter "ERM Group") is a global company that provides environmental, health and safety, risk, and social consulting services, primarily to Fortune 1000 clients. It has over 3,000 employees in 137 offices in 39 countries around the world.

7. Defendant Environmental Resources Management – Southeast, Inc. (hereinafter "ERM Southeast") is the primary operating entity for the Company's Southeast region of the U.S. and a wholly-owned subsidiary of ERM Group.

8. Defendant ERM Remediation & Construction Management Southeast, LLC (hereinafter "ERM RCM SE") is a wholly-owned subsidiary of ERM Southeast.

9. Defendants ERM Group, ERM Southeast and ERM RCM SE were joint employers of Plaintiff and shall hereinafter be collectively referred to as "ERM" or "Defendant."

10. ERM is an "employer" as defined by the ADA, 42 U.S.C. 12111(5) and ERISA, 29 U.S.C.A. § 1167.

11. At all times relevant hereto, ERM maintained an employee welfare benefit plan providing medical care that qualifies as a "group health plan" under ERISA.

12. Defendants ERM Group, ERM Southeast and ERM RCM SE can be served with process by service on C.T. Corporation System, 1201 Peachtree Street, N.E., Atlanta, GA 30361.

## Factual Allegations

13. The Plaintiff was hired by ERM Southeast as an Environmental Field Technician (hereinafter "field technician") on July 21, 2006. A field technician performs a number of functions, including operating environmental remediation field equipment at various customer sites.

14. At times, the field technician uses chemicals to assist in the remediation process. One chemical that may be used is potassium permanganate, which acts as a catalyst to break down certain contaminants to non-toxic materials to assist in cleaning up a site.

15. ERM advised Plaintiff he would be classified as a part-time, "provisional employee," and required Plaintiff to acknowledge this in a written statement. Under this classification, Plaintiff was not entitled to the standard employee health and welfare and other benefits offered to ERM's full-time permanent employees. Consequently, Plaintiff was excluded from participation in the Company's group health insurance plan, dental plan and short and long term disability plans, all ERISA plans. Plaintiff was also denied participation in the employee bonus program, and was denied payment for absences from employment due to sickness, holidays and vacation.

Case 1:10-cv-00336-WSD   Document 1   Filed 02/05/10   Page 5 of 13

16. Shortly after starting work, Plaintiff began working in excess of 50 hours per week, as did the other field technicians. Plaintiff worked in excess of 40 hours per week on a regular basis.

17. ERM decided to classify Plaintiff as a part-time "provisional" employee, instead of a full-time employee, for the purpose of interfering with Plaintiff's right to receive benefits pursuant to the Company's group health and welfare plans and other ERISA plans.

18. At the time that Plaintiff was hired and classified as a "provisional" field technician, the Company employed other "provisional" field technicians who had been employed with ERM for a number of years and they were working in excess of 40 hours per week.

19. ERM classified these other individuals as "provisional" for the purpose of interfering with their right to receive benefits pursuant to the Company's group health and welfare plans and other ERISA benefit plans.

20. From his hire date on July 21, 2006 until October 19, 2007, Plaintiff performed his job in an exemplary manner. Within a year of beginning employment, ERM began discussing with Plaintiff it's intention to promote him to a salaried position that would lead to his becoming a project manager.

16. Shortly after starting work, Plaintiff began working in excess of 50 hours per week, as did the other field technicians. Plaintiff worked in excess of 40 hours per week on a regular basis.

17. ERM decided to classify Plaintiff as a part-time "provisional" employee, instead of a full-time employee, for the purpose of interfering with Plaintiff's right to receive benefits pursuant to the Company's group health and welfare plans and other ERISA plans.

18. At the time that Plaintiff was hired and classified as a "provisional" field technician, the Company employed other "provisional" field technicians who had been employed with ERM for a number of years and they were working in excess of 40 hours per week.

19. ERM classified these other individuals as "provisional" for the purpose of interfering with their right to receive benefits pursuant to the Company's group health and welfare plans and other ERISA benefit plans.

20. From his hire date on July 21, 2006 until October 19, 2007, Plaintiff performed his job in an exemplary manner. Within a year of beginning employment, ERM began discussing with Plaintiff it's intention to promote him to a salaried position that would lead to his becoming a project manager.

21. On or about October 19, 2007, Plaintiff was working on a remediation project in Rockmart, Georgia. Plaintiff passed out and required CPR on the scene, before being transported to Redmund Regional Hospital in Rome, Georgia. Plaintiff was given a wide variety of medical tests during a four day stay in the hospital. No medical explanation was found for the incident, but medical tests revealed that Plaintiff did **not** have a heart attack. Nor was there any medical evidence to suggest Plaintiff could not work with potassium permanganate.

22. The Plaintiff was frustrated that he had to endure four days of costly medical tests and procedures because he had no health or disability insurance or sick days to compensate him for his expenses because ERM had intentionally mis-classified him as a "provisional" and prohibited him from participating in its employee benefit plans.

23. ERM promised to pay for the medical bills, but did not due so and Plaintiff would received collection calls and letters for overdue payments. These expenses have negatively affected Plaintiff's credit rating and the creditors' calls were causing him emotional distress.

24. On or about October 30, 2007, Plaintiff was released to work without restrictions, and Plaintiff took his medical release to ERM anxious to get back

to work. ERM refused to allow Plaintiff to return to work until he completed a new physical examination by a company doctor.

25. At all times since October 19, 2007, Plaintiff has been treated by ERM as having a physical impairment. ERM mistakenly believes that Plaintiff has a physical impairment that substantially limits one or more of his major life activities. Thus, since October 19, 2007, ERM has regarded Plaintiff as disabled under the Americans with Disabilities Act, 42 U.S.C. § 12102(2)(c).

26. On or about November 6, 2007, Plaintiff completed and passed the ERM doctor's physical. However, ERM still refused to allow Plaintiff to return to work, stating for the first time that it had to receive and review the hospital records before Plaintiff could return to work.

27. Over the course of several weeks, Plaintiff repeatedly attempted to effectuate the transfer of medical records to ERM. Eventually, Plaintiff hand-delivered the medical documents to ERM to speed up his return to work. During this time period, Plaintiff repeatedly asked ERM to allow him to return to work because he had no income and his medical bills remained unpaid, but the Company declined due to its perception that Plaintiff suffered from a disability.

28. On or about January 17, 2008, Plaintiff had a meeting with Hunter Sartain, the general manager in Atlanta, and HR Director Valerie Rennestad. During this meeting, Plaintiff was advised that the Company had decided that due to his medical condition, either a heart or respiratory problem, Plaintiff would not be allowed to return to work as a field technician because he would have to work with a chemical oxidation agent and thus the Company could not use him any more. Mr. Sartain said that the fact Plaintiff suffered from high blood pressure was also a consideration in letting him go.

29. Despite Plaintiff's attempts to explain that nothing was physically wrong with him, that both his doctors and the Company's doctor had given him a clean bill of health, and that he could wear a respirator when he worked around chemicals, if necessary. Mr. Sartain and Ms. Rennestad refused to reinstate Plaintiff to his former position.

30. Plaintiff asked to be considered for other work with the Company, but since January 17, 2008, Plaintiff has been denied the opportunity to work for the Company. There has been significant other work at ERM that did not involve working with chemicals, but Plaintiff was not permitted to work in these jobs. Moreover, the Company no longer uses potassium permanganate in the form that it used in 2007.

31. ERM's decision to terminate Plaintiff was based on its perception that Plaintiff suffered from a disability. Specifically, ERM believes that several of Plaintiff's major bodily functions (respiratory, circulatory and cardio-vasuclar) are limited by a physical impairment. ERM has this perception of Plaintiff despite the fact that all of the medical evidence is to the contrary.

32. At the time of his termination, Plaintiff was perceived by the Defendants as suffering from a disability, as that term is defined under the ADA, 42 U.S.C. § 12102.

33. At all times relevant to this action, Plaintiff was able to perform the essential functions of his job as an Environmental Field Technician.

34. ERM's records indicate that during the relevant time period, ERM had work that Plaintiff could perform. Indeed, ERM has such work available currently.

## Count I

## Americans with Disabilities Act

35. Plaintiff realleges paragraphs 1 - 34 and incorporates them as if fully set forth herein.

36. ERM's discharge of Plaintiff on account of his perceived disability constitutes discrimination against Plaintiff with respect to the terms, conditions, or privileges of employment. ERM's actions constitute a violation of 42 U.S.C. §§ 12102(2)(c) and 12112.

37. In terminating Plaintiff on account of his perceived disability ERM acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

38. As a direct and proximate result of ERM's discrimination on the basis of its perception that Plaintiff suffered from a disability, Plaintiff has suffered lost wages and benefits, as well as emotional distress.

39. ERM's discriminatory conduct towards Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## Count II

## Employee Retirement Income Security Act

40. Plaintiff incorporates by reference as if set forth fully herein paragraphs 1-36 of this Complaint.

41. ERM's intentional mis-classification of Plaintiff as a "provisional employee" was for the specific purpose of interfering with his attainment of participation rights in violation of ERISA Section 510, 42 U.S.C. §1140,

42. The conduct of ERM and its failure to allow Plaintiff and other employees mis-classified as "provisional" to participate in ERM's employee benefit plans, constitutes a breach of their obligations under the Plans and ERISA.

43. In classifying Plaintiff as a provisional employee and interfering with Plaintiff's right to participate in group benefit plans, ERM acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

44. As a direct and proximate result of ERM's violation of ERISA, Plaintiff has suffered, and continues to suffer substantial pecuniary damages for lost wages and benefits and medical care, as well as emotional distress and other non-pecuniary damages.

WHEREFORE, Plaintiff demands a jury trial on all counts and demands judgment as follows:

A. A declaratory judgment declaring that ERM engaged in unlawful employment practices in violation of the Americans With Disabilities Act and the Employee Retirement Income Security Act;

B. An injunction requiring Defendant to reinstate Plaintiff to his previous job or a substantially equivalent position, with all interim salary increases he would have received had he not been unlawfully terminated;

C. An award of all back pay and lost benefits which Plaintiff has suffered as a result of ERM's ADA and ERISA violations;

D. An award of his medical expenses which he has incurred as a direct result of the injuries inflicted upon him by the conduct of ERM, in an amount to be proven at trial;

E. An award of compensatory damages sustained as a result of ERM's wrongful acts, including but not limited to damages for future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses sustained by Plaintiff as a result of ERM's violations of the ADA and ERISA;

F. An award of punitive damages;

G. An award of the necessary expenses of litigation, including attorney's fees;

H. Pre-judgment interest on all damages awarded to Plaintiff; and

I. Such other and further relief as the jury and the Court deem just and proper.

Dated this 5th day of February, 2010.

Respectfully submitted,

By: *Debra Schwartz*
Debra E. Schwartz
State Bar No. 631035

Law Offices of Debra E. Schwartz
945 E. Paces Ferry Road
Atlanta, Georgia 30326
404-842-7262 (ph.)
404-842-7277 (fax)
des@GAemploymentlawyers.com
www.GAemploymentlawyers.com